UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN WAYNE HAMM,                                16-CV-679-MJR
                                                DECISION AND ORDER
            Plaintiff,

      -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

            Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16).

Plaintiff John Wayne Hamm ("Hamm") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Hamm's motion (Dkt. No. 10) is denied and the Commissioner's motion (Dkt. No. 11) is granted.

## BACKGROUND

On April 27, 2010, Hamm filed applications for DIB and SSI alleging disability since February 1, 2010 due to brain, neck, shoulder and leg damage as a result of a motor vehicle accident, problems with memory, lack of feeling below his knee, deafness in his left ear and blindness in his left eye. (*See* Tr. 303).[2] Hamm's motor vehicle accident

---
[1]   The Clerk of Court is directed to amend the caption accordingly.
[2]   References to "Tr." are to the administrative record in this case.

occurred on July 7, 1999. (Tr. 531). However, he continued to work full-time from 1999 through his alleged disability onset date of February 1, 2010. (Tr. 107-08, 244, 304). Born on August 19, 1965, Hamm was 44 years old at the time of the alleged disability onset date. (Tr. 130).

Hamm's benefit applications were initially denied on June 25, 2010. (Tr. 119-20, 124). Hamm sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") William Weir on September 7, 2011. (Tr. 91-118). On February 23, 2012, ALJ Weir issued a decision that Hamm was not disabled under the Act. (Tr. 124-31). Hamm sought review of the decision, and the Appeals Council remanded the case for further proceedings. (Tr. 136-40, 202). Specifically, the Appeals Council instructed the ALJ to consider whether Hamm has a severe mental impairment, to reassess Hamm's residual functional capacity, with particular attention to possible limitations related to vision loss in Hamm's left eye, and, if appropriate, to obtain additional evidence from a medical expert or a vocational expert. (Tr. 138-40).

ALJ Weir conducted a second hearing on September 19, 2013. (Tr. 38-90). During the hearing, he took testimony from vocational expert (VE) Jay Steinbrenner and psychological expert (PE) Dr. Jerry Cottone. (Tr. 42-89, 230-37). On September 26, 2014, ALJ Weir issued a decision finding that Hamm was not disabled under the Act. (Tr. 20-32). Hamm's request for review of the decision was denied by the Appeals Council on July 6, 2016. (Tr. 1-16). The ALJ's September 26, 2014 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

**DISCUSSION**

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

4

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

5

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that Hamm met the insured status requirements of the Act through June 30, 2014. (Tr. 23). The ALJ then followed the required five-step analysis for evaluating Hamm's claim. Under step one, the ALJ found that Hamm has not engaged in substantial gainful activity since the alleged onset date of February 1, 2010. (*Id.*). At step two, the ALJ found that Hamm has severe impairments consisting of monocular vision, cervicalgia (neck pain), lumbago (lower back pain), and depression.[3] (*Id.*). At step three, the ALJ determined that Hamm does not have an impairment that meets or

---

[3] Also at step two, the ALJ concluded that Hamm's hearing loss, carpal tunnel syndrome, and leg and shoulder pain have not posed more than minimal functional limitations on Hamm's ability to do basic work activities and are not severe impairments.

6

medically equals the severity of one of the listed impairments. (Tr. 24-26). Before proceeding to step four, the ALJ assessed Hamm's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except he has monocular vision and is limited to jobs involving simple, repetitive tasks.

(Tr. 26-30). Proceeding to step four, the ALJ determined that Hamm is unable to perform any past relevant work. (Tr. 29-30). In considering step five, the ALJ heard testimony from VE Steinbrenner. (Tr. at 31-32). Based upon Steinbrenner's testimony, which took into account Hamm's age, education, work experience and RFC, the ALJ concluded that Hamm can perform jobs that exist in significant numbers in the national economy, such as usher and cafeteria attendant. (*Id.*). Accordingly, the ALJ found that Hamm has not been under a disability within the meaning of the Act from February 1, 2010 through the date of his decision.

IV.   *Hamm's Challenges*

Hamm first argues that remand is necessary because the ALJ failed to provide good reasons as to why he did not give significant or controlling weight to the opinion of Dr. MacLean, Hamm's treating physician. (*See* Dkt. No. 10-1 (Hamm's Memo. of Law)).

The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable evidence and is not inconsistent with other substantial evidence in the record." 20 C.F.R. §404.1527(c)(2); *Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir. 1999). "When other substantial evidence in the record conflicts with the treating

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b) and 416.967(b).

7

physician's opinion, however, that opinion will not be deemed controlling…[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell*, 177 F.3d at 133; *accord* 20 C.F.R. §404.1527(d)(4). In addition, the ultimate finding as to whether a claimant is disabled and cannot work is reserved to the Commissioner. *Id.* at §404.1527(d)(1). To that end, "the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability..[and a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell*, 177 F.3d at 133. Indeed, the Commissioner is required to explain the weight it gives to the opinions of a treating physician and to provide "good reasons" for not crediting the opinion of a treating physician. 20 C.F.R. §404.1527(c)(2).

Here, the ALJ provided good reasons for giving little weight to the findings and opinions of Dr. MacLean as to Hamm's limitations. To that end, ALJ Weir described how Dr. MacLean's assessments of Hamm's condition were both internally inconsistent and unsupported by other substantial evidence in the record. On June 9, 2010, Hamm, who had been involved in a serious car accident in July of 1999, requested that Dr. MacLean complete a Residual Functional Capacity Questionnaire for purposes of obtaining disability benefits. (Tr. 531). On the Questionnaire, Dr. MacLean noted that Hamm had significant work-related limitations, including frequent pain and other symptoms severe enough to interfere with attention and concentration, the need to frequently change positions at will and the need to take unscheduled breaks. (Tr. 29, 483-87). Dr. MacLean further noted that Hamm could only sit for 15 minutes at a time. (*Id.*). A little less than one year later, in May of 2011, Dr. MacLean completed a Commercial Driver Fitness

8

Determination on Hamm's behalf to be submitted to the Department of Transportation for recertification of Hamm's commercial driver's license. (Tr. 29, 538-43). In contrast to his previous assessment, Dr. MacLean certified that Hamm had little to no physical limitations. (*Id.*). He specifically indicated that Hamm had no impaired vision, no chronic low back pain, and no limitation of motion or tenderness related to his spine or musculoskeletal system. (*Id.*). Dr. MacLean certified that the numbness in Hamm's leg as well as his "visual field cut of the upper outer quadrant" should not interfere with his ability to drive a truck. (*Id.*). He also certified that Hamm had no nervous or psychiatric symptoms such as depression. (*Id.*). A few months later, on August 17, 2011, Hamm visited Dr. MacLean complaining of low back pain. (Tr. 581). At that time, Dr. MacLean completed a Mental Residual Functional Capacity Questionnaire for Hamm. (Tr. 566, 581). Therein, he indicated that Hamm suffered from major depression including generalized persistent anxiety and difficulty thinking or concentrating. (Tr. 29, 565-70). In May of 2013, Dr. MacLean completed, on Hamm's behalf, a Medical Examination for Employment Ability Assessment for the New York State Office of Temporary Disability Assistance. (Tr. 604-05). He opined that Hamm was very limited with regard to walking, standing, lifting, carrying, pushing, pulling, seeing and using stairs as well as moderately limited as to sitting and using his hands. (*Id.*). He also found Hamm to be moderately limited with respect to carrying out instructions, maintaining attention and concentration and functioning in a work setting at a consistent pace. (*Id.*). Dr. MacLean further noted that Hamm had back pain, balance problems, and numbness and sensory loss in his lower extremities. (*Id.*).

In sum, Dr. MacLean found: (1) in June of 2010 that Hamm had significant work-related limitations, needed to frequently change positions, and could only sit for 15 minutes at a time; (2) in May of 2011 that Hamm had virtually no limitation of motion, no visual impairments and no condition that would impact his ability to drive a truck; and (3) in May of 2013 that Hamm was very limited as to seeing, walking, standing, was moderately limited as to sitting and had back pain and balance problems. The ALJ correctly noted that there is no evidence in the record, including in Dr. MacLean's own progress notes, of improvements or deteriorations in Hamm's conditions that would account for these changing assessments of Hamm's abilities and functional limitations. (Tr. 29). Indeed, the car accident, which is the source of Hamm's impairments, occurred in 1999 and Dr. MacLean found that Hamm "recuperated remarkably well from those injuries." (Tr. 587-88). The ALJ also noted inconsistencies in Dr. MacLean's assessment of Hamm's mental health. (Tr. 29). In August of 2011, Dr. MacLean found that Hamm suffered from major depressive disorder. However, just a few months prior, Dr. MacLean certified to the Department of Transportation that Hamm did not suffer from depression. Moreover, while Dr. MacLean's August 2011 assessment indicates that Hamm's depression causes him to be limited or seriously limited in a number of work-related capacities, Dr. MacLean also stated that Hamm's mental health conditions were well-controlled with medication and assigned him a global assessment functioning (GAF) score of 70.[5] (*Id.*). *See Michels v. Astrue*, 297 Fed. Appx. 74, 75-76 (2d Cir. 2008) (a

---

[5] A GAF score of between 61 and 70 indicates some mild symptoms…but generally functioning pretty well, with some meaningful interpersonal relationships. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) (DSM-IV). Dr. Cottone, the psychological expert, testified that a GAF score of 70 would indicate mild symptoms, while a GAF score below 50 "would start to indicate more serious symptoms." (Tr. 45).

physician's opinions are given less weight when those opinions are internally inconsistent).

Moreover, the ALJ accurately concluded that Dr. MacLean's opinions as to Hamm's significant limitations were not only internally inconsistent, but also at odds with other substantial evidence in the record. The ALJ noted that after undergoing treatment for injuries sustained in the 1999 accident, the clinical findings and treatment as to Hamm's physical condition have been relatively modest. Dr. Miller, an osteopath, performed a consultative examination on Hamm on June 11, 2010. (Tr. 488-91). She found that Hamm was in no acute distress and walked with a normal gait, that he had some limited range of motion in his lumbar spine, shoulders, knees and feet, that he had full range of motion in his elbows, wrists and hips, that his joints were stable and nontender, that he had full strength in his extremities, that he had no muscle atrophy and that his prognosis was stable. (Tr. 488-91). A magnetic resonance imaging (MRI) scan on Hamm's cervical spine on August 1, 2013 showed a disc bulge at C6-7 but no evidence of spinal stenosis and satisfactory alignment of cervical segments. (Tr. 607). An x-ray of Hamm's neck on August 3, 2013 showed loss of normal cervical lordosis with no evidence of acute hardware failure. (Tr. 606). During a visit to Lake Shore Health Center on November 15, 2014 due to stomach pain, Hamm denied any musculoskeletal or psychiatric symptoms. (Tr. 735). The examination revealed normal range of motion in his neck, a normal back examination, and normal upper and lower extremities. (Tr. 735). During a physical exam on April 5, 2013 for treatment of dizziness and blurred vision, Hamm reported no musculoskeletal or psychiatric problems. (Tr. 599). Medical evidence in the record as to Hamm's cognitive abilities is also inconsistent with the limitations noted

by Dr. MacLean. Dr. Cottone, the psychological expert, testified at the hearing that he saw no evidence depicting a decline in Hamm's memory or cognitive functioning since the 1999 accident and that Hamm could perform simple, repetitive tasks on a routine basis. (Tr. 44, 48). In June of 2011, Dr. Ryan, a licensed psychologist, performed a consultative evaluation. (Tr. 494-497). Dr. Ryan concluded that Hamm could follow and understand simple directions, perform simple tasks, generally maintain attention and concentration, and maintain a regular schedule. (Tr. 496).

Finally, Hamm's own testimony and long-term work history is inconsistent with the significant limitations found by Dr. MacLean. Hamm treated his pain with Ibuprofen, rest and stretching exercises. (Tr. 53-54, 320). Hamm testified before the ALJ that following the car accident in 1999, he continued to work as a truck driver until 2005. (Tr. 107-108). Hamm further testified that he worked as a mechanic from 2005 through February of 2010. (*Id.*). Hamm first testified that he left his job because he had difficulty remembering things and was afraid he would hurt someone if he made a mistake. (Tr. 51, 97, 109, 112). However, Hamm also testified that he left his last position because the company laid-off all employees in 2010. (*Id.*).

Thus, the Court finds that the ALJ provided good reasons to support his conclusion that many of Dr. MacLean's findings were internally inconsistent and not supported by the substantial evidence in the record. See *Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (holding that it was not error for ALJ to decline to afford controlling weight to a treating physician when the opinion was internally inconsistent as well as inconsistent with other substantial evidence in the record); *Manning v. Colvin*, 13-CV-497, 2014 U.S. Dist. LEXIS 147546 (WDNY Oct. 16, 2014) (finding that the ALJ properly gave little weight

to the treating physician's opinion and "great weight" to the consultative examiner's prognosis where the latter was more consistent with the medical evidence in the record).

Hamm also argues that the ALJ's physical RFC assessment is unsupported by substantial evidence because it assumes that Dr. Miller's assessment of moderate limitation is commensurate with light work and because it rejects medical opinion evidence regarding his ability to reach. (*See* Dkt. No. 10-1 (Hamm's Memo. of Law)).

Following a consultative examination on June 11, 2010, Dr. Miller concluded that Hamm has moderate limitations with repetitive bending, turning, twisting, lifting, carrying, reaching, pushing, and pulling, and also recommended that Hamm avoid heights secondary to his vision impairment as well as anything requiring depth perception. (Tr. 491). ALJ Weir credited Dr. Miller's findings that Hamm has moderate limitations with lifting and carrying as well as a vision impairment. (Tr. 28). Contrary to Hamm's argument, the ALJ went on to explain how these limitations allowed for a RFC of light work with some additional restrictions related to Hamm's monocular vision. Specifically, the ALJ explained that Hamm should not do more than moderate amounts of lifting and carrying and should avoid heights and anything requiring depth perception. (*Id.*). These findings are consistent with the Commissioner's definition of light work as requiring lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. This assessment is also consistent with other evidence in the record as to Hamm's capabilities. In June of 2012, Dr. MacLean opined that Hamm could frequently lift 10 pounds and Hamm testified that he could lift 10 to 15 pounds. (Tr. 103, 485). Indeed, courts in this Circuit have found that mild or moderate limitations in general, and specifically as to a plaintiff's ability to lift, are consistent with the ability to perform light

work.  *See Burnette v. Colvin*, 564 Fed. Appx. 605, 608 (2d Cir. 2014) (concluding that substantial evidence supported the ALJ's finding that plaintiff could perform limited light work, where "ALJ relied on the evaluations…that suggest[e]d [plaintiff's] physical and mental limitations were mild or moderate[.]"); *Harris v. Comm'r of Soc. Sec.*, 09-CV-1112, 2011 U.S. Dist. LEXIS 92366 (NDNY July 27, 2011) (upholding ALJ's determination that slight to moderate limitations in activities that require lifting, carrying, and reaching are consistent with plaintiff's ability to perform light work); *Vargas v. Astrue*, 10 Civ. 6306, 2011 U.S. Dist. LEXIS 78819 (SDNY July 20, 2011) (moderate limitations for lifting, carrying, handling objects and climbing stairs are "consistent with a conclusion that plaintiff can perform light work").

Further, the ALJ's decision to give little weight to Dr. Miller's opinion that Hamm has moderate limitations in repetitive bending, turning, twisting and reaching is supported by substantial evidence in the record.  *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (there is no requirement that an ALJ accept every limitation found by a consultative examiner).  ALJ Weir correctly noted that MRI's and x-rays of Hamm's cervical spine taken in 2013 were largely benign.  (Tr. 28, 606-07).  ALJ Weir further reasoned that Dr. Miller noted a negative straight leg raising test, normal deep tendon reflexes and strength of upper and lower extremities, normal gait and stance, no sensory deficits and no evidence muscle atrophy.  (Tr. 28-29).  The ALJ noted that Hamm reported cleaning, doing laundry, and shopping once a week, carrying out child-care needs daily, and performing self-care tasks.  (*Id.*).  In January of 2014, Dr. McLean reported that Hamm had full extension in his right arm and normal strength in his hands and arms.  (Tr. 640-641).  Other evidence in the record as to Hamm's general capabilities and condition

14

further support the ALJ's decision not to credit all of the limitations found by Dr. Miller. In August of 2012 Dr. MacLean opined that Hamm recovered remarkably well after the 1999 car accident. (Tr. 587). As noted by the ALJ, there is no medical evidence in the record of a significant deterioration in Hamm's condition from 1999 until his alleged disability onset date of February 1, 2010. The ALJ reasons that Hamm's treatment has been conservative, his pain has been treated with over-the-counter medication rather than prescription drugs and there is no evidence that he has difficulty ambulating. (Tr. 30, 631). Moreover, Hamm worked as a truck driver and a mechanic for ten years after the accident and testified that he left his position in 2010 because the company laid off all employees. (Tr. 28).

Lastly, Hamm argues that remand is required because the ALJ elevated his own judgment above the medical opinions with respect to Hamm's social functioning.[6] (*See* Dkt. No. 10-1 (Hamm's Memo. of Law)).

The Court finds that the ALJ cited sufficient evidence in the record to support his determination that Hamm is not significantly limited in social functioning. The ALJ noted that Hamm has not treated with any mental health specialists and that his primary care physician found his depression to be well-controlled by medication. (Tr. 28-29). The ALJ explained that in August of 2011, Hamm was assigned a GAF score of 70, reflecting mild symptoms. (Tr. 29, 566). In fact, in a Mental Residual Functional Capacity Questionnaire on August 17, 2011, Dr. MacLean rated Hamm as satisfactory or better in his ability to interact with members of the general public and to maintain socially appropriate behavior.

---

[6] Consultative Examiner Thomas Ryan, Ph.D. found that Hamm had moderate limitations in his ability to deal with others. (Tr. 496). However, ALJ Weir found very little support in the overall record for this opinion. (Tr. 29). Likewise, the ALJ found that state agency psychological consultant T. Andrews assessed more difficulties in social functioning than are established by the overall record. (Tr. 30, 519).

(Tr. 569). Likewise, on May 21, 2013, Dr. MacLean found that Hamm was not limited in his abilities to make simple decisions, interact appropriately with others, and maintain socially appropriate behavior. (Tr. 605). In May of 2010, Hamm completed an Activities of Daily Living Questionnaire wherein he stated that he has no issues getting along with bosses, teachers, police, landlords, or other people in authority, and that he never lost a job due to an inability to get along with others. (Tr. 316-17). The ALJ further noted that Hamm told Dr. Miller that he "enjoyed socializing with friends" and there is no indication that he cannot get along with his doctors. (Tr. 25, 489). Thus, the Court finds that there is substantial evidence to support ALJ Weir's findings that Hamm is no more than mildly limited in social functioning. *See Moxham v. Comm'r of Soc. Sec.*, 3:16-CV-1170, 2018 U.S. Dist. LEXIS 35157 (NDNY Mar. 5, 2018) ("There is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC. Rather, the ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination consistent with the evidence as a whole.").

## **CONCLUSION**

For the foregoing reasons, Hamm's motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   July 27, 2018
         Buffalo, New York

                                    */s/ Michael J. Roemer*
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge